

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00047-CR

JAKEOUS JAMAL JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 21-0315X

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

# MEMORANDUM OPINION

Indicted for murder in Harrison County, appellant, Jakeous Jamal Johnson, waived his right to a jury trial and had his case heard by the trial court. *See* TEX. PENAL CODE ANN. § 19.02 (Supp.). On appeal, Johnson claims his waiver of a jury trial was not made knowingly and voluntarily. After reviewing the record and applicable law, we do not agree.

We overrule Johnson's point of error and affirm the trial court's judgment.

## I. Background

Johnson was twenty-three when he lived in an apartment in Marshall. He was friends with his neighbor, Cedric King, and they were also drinking and occasional cocaine partners. On June 17, 2021, they were drinking beer and Crown Royal whiskey and did some cocaine. Johnson shot King twice, once in the head and once in the abdomen, and King died. Johnson called 9-1-1 after the shooting and told the operator that he had shot his neighbor.

At trial, Johnson admitted to killing King but argued that it was in self-defense. In an interview with law enforcement after the murder, Johnson said that King frequently threatened to kill him and his family. At trial, Johnson told the court that King, over a period of time, repeatedly drugged his drinks and sexually assaulted him. The night of the shooting, Johnson thought he saw King put something in his drink. When asked why he had never reported those acts to law enforcement or told his family, Johnson said he had been too embarrassed. The trial court did not believe Johnson's account of events and found him guilty of murder. The trial court sentenced Johnson to twenty-five years' imprisonment.

## II.     Standard of Review

A criminal defendant in Texas has an inviolate right to a jury trial.  TEX. CONST. art. I, § 15 ("The right of trial by jury shall remain inviolate."); *see Marquez v. State*, 921 S.W.2d 217, 222 (Tex. Crim. App. 1996).  This right is also guaranteed under the United States Constitution.[1]

A defendant may, however, waive that right.  TEX. CODE CRIM. PROC. ANN. art. 1.13 (Supp.).  "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  *Rios v. State*, 665 S.W.3d 467, 479 (Tex. Crim. App. 2022) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970) (footnote omitted)).  "The right to a jury trial is a waivable-only right."  *Id.* at 477.[2]  "[A]s a matter of federal constitutional law, the State must establish through the trial record an express, knowing, and intelligent waiver of jury trial by a defendant.  A waiver of jury is not to be presumed from a silent record, at least on direct appeal." *Guillett v. State*, 677 S.W.2d 46, 49 (Tex. Crim. App. 1984).

---

[1]"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."  U.S. CONST. amend. VI.

[2]*See Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997):

> [O]ur system may be thought to contain rules of three distinct kinds:  (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request.  In the present context, the most important thing to remember about the Texas law of procedural default is that it only applies to the last category.

*Marin*, 851 S.W.2d at 279.  The second category, "[w]aiveable rights," may be found to have been waived only where the party is "deemed to have done so in fact . . . plainly, freely, and intelligently, sometimes in writing and always on the record."  *Id.* at 280 (citing *Goffney v. State*, 843 S.W.2d 583, 585 (Tex. Crim. App. 1992)).

3

"Whether 'there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.'" *Rios*, 665 S.W.3d at 479 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 275, 278 (1942)).

## III.    Analysis

Here, Johnson appeared at a pretrial hearing approximately four months before trial. His attorney announced to the court that Johnson was present and ready to proceed "on a waiver of trial by jury." Johnson told the trial court (1) that he had signed a document waiving his right to a jury trial, (2) that he understood, as instructed by the court, that "all proceedings in this matter would be decided by the Court and the Court only as to [Johnson's] guilt or innocence," and (3) that, if Johnson were found guilty, the court would set punishment. Johnson told the trial court that he had discussed the facts of the case with his attorney, and his attorney told the court that Johnson was competent, understood the situation, and indeed wished to have the case tried to the court rather than a jury.

Johnson's counsel further told the court that he had discussed the waiver with Johnson's family "on a number of occasions" and that he had reviewed the State's evidence. Johnson's counsel told the court that Johnson had been evaluated and found competent to stand trial. The trial court found that Johnson executed the waiver of jury trial "freely and voluntarily" and was "mentally competent" and accepted Johnson's waiver. Finally, Johnson's signed waiver of jury trial is in the record before us.[3]

---

[3]The waiver is signed by Johnson, his attorney, and the attorney for the State.

### A. The *Rios* Factors

The trial court's admonishments were brief; however, the Texas Court of Criminal Appeals has observed that, "[w]hile admonishments are preferred by many courts, numerous courts have held a colloquy regarding the waiver of a jury is unnecessary." *Id.* at 479 n.25.[4]

> Courts have considered a number of factors as applicable to the facts of the case when determining whether a jury trial waiver was knowing and intelligent. For example, they have considered whether the defendant knew about his right to a jury and the nature of the right, whether the defendant executed a written jury waiver, whether the trial court admonished the defendant about his right to a jury, the defendant's education and background and legal sophistication, the level of the defendant's involvement in his defense, his ability to understand courtroom discussion regarding waiver of a jury, the words and actions of the defendant, discussions with trial counsel about the right to a jury and representations of trial counsel, what language the defendant understands and the presence of an interpreter if not English, the lack of an objection before or shortly after the bench trial began, and whether there is a docket entry indicating that the defendant expressly waived his right to a jury on the record and that waiver was voluntary, knowing, and intelligent.

*Id.* at 479–82 (footnotes omitted) (citations omitted).[5] We consider Johnson's waiver in light of the factors suggested in *Rios*.

In *Rios*, the defendant was "a Mexican national and native Spanish speaker whose ability to read and write English [wa]s limited." *Id.* at 482. Rios acknowledged "that he knew that he had the right to be tried by a jury," "but a waiver cannot be knowing and intelligent unless the record shows that the defendant at least had sufficient awareness of the relevant circumstances and likely consequences of waiving his right to a jury." *Id.* (citing *Brady*, 397 U.S. at 748

---

[4]*Rios* cited several cases from federal appellate circuits and state high courts for its suggested considerations.

[5]The Texas Court of Criminal Appeals in *Rios* found "that the record d[id] not expressly show that [Rios] knowingly and intelligent[ly] waived his right to a jury" and that the "error [wa]s structural." *Rios*, 665 S.W.3d at 486. The court reversed and remanded the case for a new trial. *Id.*

(footnote omitted)). Rios's attorney "vaguely testified that he advised [Rios] 'of his right to a jury trial' and later said, '[w]e had our option. We decided to go with none (sic) jury trial,'" but the record did "not show, because no one asked, what advice trial counsel gave to [Rios] about his right to a jury." *Id.* at 483 (second alteration in original). Also, in *Rios*, "trial counsel testified that the judge said that he did not want to try the case. Trial counsel did not say (again he was not asked) whether he told [Rios] that the judge did not want to try his case, but it appears not." *Id.* There was no written jury waiver, and the trial court made no admonishments. *Id.* at 482 ("No jury waiver was executed . . . and the right to a jury trial was never discussed in open court."). The *Rios* court found the evidence "insufficient to show that [Rios] expressly, knowingly, and intelligently waived his right to a trial by jury." *Id.* at 485.

### B.      Johnson's Waiver

The record before us supports a finding that Johnson knew he had a right to a jury trial and the nature of that right. *See id.* at 479. A written jury waiver was executed. *See id.* at 479–80. Johnson spoke English and appeared, from the reporter's record and an interview he gave to law enforcement, to have no difficulty understanding the trial court or communicating with it or law enforcement. *See id.* at 481. Johnson graduated high school and briefly attended Texas State Technical College. *See id.* at 480.

Johnson's grandmother testified that he had been prosecuted for "DWIs" around the time he graduated high school. She also told the court that her brother, who was "in the bail bond business," tried to help Johnson, "counsel[ing] with him and . . . try[ing] to get him out of jail

and try[ing] to take care of things for him."[6]  Those legal run-ins are relevant to *Rios*'s suggested

consideration of Johnson's "legal sophistication," "involvement in his defense," "his ability to

understand courtroom discussion regarding waiver of a jury," and "discussions with trial counsel

about the right to a jury and representation of trial counsel."  *Id.* at 480–81.[7]  The trial court

found that Johnson made his waiver of jury trial "freely and voluntarily" and that he was

"mentally competent."  The trial court's docket sheet simply states that Johnson made a "waiver

of jury trial."  *See id.* at 482.

"A defendant need not understand every nuance of the right to a jury before waiving that

right . . . but a waiver cannot be knowing and intelligent unless the record shows that the

defendant at least had sufficient awareness of the relevant circumstances and likely consequences

of waiving his right to a jury."  *Id.* (citing *Brady*, 397 U.S. at 748 (footnote omitted)).  In *Garza*

*v. State*, 100 S.W.3d 347 (Tex. App.—San Antonio 2002, no pet.), trial counsel "advised Garza

of his right to a jury trial, explained to Garza his ability to waive that right, and discussed the

potential advantages and disadvantages of such a waiver."  *Id.* at 348.  Because "Garza indicated

to his trial counsel that he would like to waive his right to a jury trial and have the case tried

before the judge," his waiver of a jury trial was made "voluntarily and knowingly."  *Id.*

---

[6]Johnson's grandmother testified that her brother also grew "tired of bailing [Johnson] out of jail."

[7]Regarding this factor, the *Rios* court observed, "In cases in which a defendant's sophistication has been considered, courts consider both the background and education of the defendant as well as his legal acumen."  *Id.* at 484.  As noted above, Rios was a native Spanish speaker and "could not interact with anyone without a Spanish speaking interpreter."  *Id.*  Such is not the case with Johnson.  Also, the record in *Rios* contained "no evidence" about his education, where here, the record shows Johnson graduated high school and briefly attended a technical college.  *Id.* The record in *Rios* "show[ed] the opposite" of a "sophisticated person with legal acumen, competently navigating his way through the Texas criminal justice system."  *Id.*  And as noted above, Johnson had some encounters with law enforcement, which led to incarceration.

7

Another factor to consider, under *Rios*, is whether the defendant lodged "an objection before or shortly after the bench trial began." *Rios*, 665 S.W.3d at 482. Johnson waived his right to a jury trial in mid-November 2023. The trial court heard the case at the end of February 2024, and there is nothing in the record suggesting Johnson had any objection or second thoughts prior to his appeal.

Here, the various factors suggested in *Rios* support a finding that Johnson was aware he had a right to a jury trial, consulted with his counsel, knew the consequences of waiving a jury trial, and still executed the waiver. The record establishes that he "expressly, knowingly, and intelligently waived his right to a trial by jury." *Id.* at 485. We overrule his point of error.

## IV. Modification of Judgment

The judgment states that Johnson pled guilty, which is incorrect. In fact, Johnson pled not guilty, and the trial court heard the evidence then found him guilty. "This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993)). "We have the authority to modify the judgment to make the record speak the truth." *Minter v. State*, 570 S.W.3d 941, 944 (Tex. App.—Texarkana 2019, no pet.) (citing TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992)). We modify the trial court's judgment to show that Johnson pled not guilty to the indictment.

**V.      Conclusion**

Accordingly, we modify the trial court's judgment to show that Johnson pled not guilty to the charge in the indictment.  As modified, the trial court's judgment is affirmed.


Charles van Cleef
Justice

Date Submitted:      September 3, 2024
Date Decided:      September 20, 2024

Do Not Publish