# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-02-00418-CR

**Jose Vazquez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. 9024100, HONORABLE BOB PERKINS, JUDGE PRESIDING**

### M E M O R A N D U M   O P I N I O N

A jury found appellant Jose Vazquez guilty of two counts of aggravated assault and two counts of aggravated sexual assault. Tex. Pen. Code Ann. §§ 22.02, .021 (West 2003). The jury assessed punishment for each of the two aggravated sexual assaults at forty-five years' imprisonment. The jury assessed ten and fifteen-year prison terms for the two aggravated assaults. By four points of error, appellant contends the evidence is factually insufficient to support each conviction. We will overrule these points of error and affirm.

The complaining witness was one of a group of Mexican nationals appellant brought across the border unlawfully. Once they reached Austin, appellant held the complainant against her will for two months in a motel room and, later, a trailer house. She testified that appellant beat her with his hands, a wooden stick, and a wire. He threatened to kill her and her family in Mexico. He raped her repeatedly while holding a knife to her throat. Appellant ripped an aluminum can with his

teeth, shaped it into a point, and held it against the complainant's neck and beside her eye as he sexually assaulted her.

The jury found that appellant sexually assaulted the complainant while using and exhibiting a deadly weapon: a knife or a piece of aluminum (count one); that appellant sexually assaulted the complainant on a different date while using and exhibiting a deadly weapon: a knife (count two); that appellant threatened the complainant with imminent bodily injury while using and exhibiting a deadly weapon: a knife or a piece of aluminum (count three); and that appellant threatened the complainant with imminent bodily injury on a different date while using and exhibiting a deadly weapon: a knife or a piece of aluminum (count four). *Id.* §§ 22.02(a)(2), .021(a)(1)(A)(i), (2)(A)(iv). Appellant does not challenge the sufficiency of the evidence as to the underlying assaults and sexual assaults, but he urges that the evidence is factually insufficient to support the findings that he used or exhibited deadly weapons in the course of the assaults.

A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is either so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Due deference must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, and the reviewing court may disagree with the fact finder only when the record clearly indicates that such a step is necessary to prevent a manifest injustice. *Id.* at 9.

The State alleged that the weapons in question were capable of causing death or serious bodily injury in the manner of their use or intended use. Tex. Pen. Code Ann. § 1.07(B) (West 2003). A serious bodily injury is a bodily injury that creates a substantial risk of death or that

2

causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. *Id*. § 1.07(46).

The complainant testified that when appellant first sexually assaulted her, "He grabbed me by the hand, he yanked me and he pushed me onto the bed and we started struggling, and he told me I was going to be his." On this occasion, appellant used the weapon he fashioned from a can: "He had a can, and using his teeth, he ripped it and he formed it into like a point, and then he would put it up here against me. And then he was also—he had his hands on my throat and was taking his fingers and shoving them into my eyes." After moving the complainant to the trailer, appellant often used a knife during his assaults. She was asked by the State, "What parts of your body would he touch with a knife?" She answered, "My neck and then he would go like towards my chest, but I always defended myself. I would always put my hands like this." She added, "With the knife, it was always only my neck, my body, threatening to stick it in me, that he was going to kill me. He used other things on my neck and in my eyes, in other words." Asked to describe what appellant did to her eyes, the complainant testified, "First with that sheet of metal that he took out of the can, he would stick it up here; and then with his fingers, he would stick them in like this really hard and he would say he was going to pull them out, my eyes."

The complainant testified that on the morning she was rescued, she hid appellant's knife behind the stove after he sexually assaulted her. Later, appellant beat her with "a piece of wood, with a piece of plastic. It was hard. After it broke into several pieces, then with a piece of wire, cable." She said, "I couldn't take any more blows, and I remember I fell to the ground." Appellant "picked me up. Well, he first hit me because, according to him, so that I would get up. But then when he saw I wasn't able to, he picked me up, took me to the mattress . . . ." The

3

complainant could not remember what happened next: "I don't really know if it was a dream or reality, but I remember a woman." In fact, a neighbor who came to the trailer to give appellant a ride heard the complainant begging for help. She entered the trailer, discovered the complainant, and took her to a nearby clinic.

Later, police searching the trailer found the knife behind the stove and it was introduced in evidence. They also seized a broken plastic rod, a piece of wood that appears to be one-inch by one-inch square and a foot long, a piece of two-by-four lumber, and a length of insulated wire or cord. A photograph introduced in evidence shows a torn piece of an aluminum beer can. A police officer testified that all of these things were capable of causing death or serious bodily injury. She also testified that a man's hands can be used as a deadly weapon.

Appellant argues that the evidence is factually insufficient to prove that the various weapons were deadly because there is no evidence that the complainant suffered life-threatening injuries, serious permanent disfigurement, or protracted loss or impairment of any bodily member or organ. It was not necessary, however, for the State to prove that appellant actually caused serious bodily injury to the complainant, or even that he intended to cause serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *Garcia v. State*, 92 S.W.3d 574, 575-76 (Tex. App.—Austin 2002, no pet.). It was sufficient for the State to prove that the alleged weapons were capable of causing serious bodily injury in the manner of their use or intended use by appellant. *McCain*, 22 S.W.3d at 503.

The complainant's testimony that appellant held the knife to her neck and chest while threatening to stab and kill her supports a finding that appellant used and intended to use the knife in a manner capable of causing serious bodily injury. Similarly, the complainant's testimony that

4

appellant held a piece of pointed aluminum by her eye as he raped her supports a finding that he used and intended to use the piece of aluminum in a manner capable of causing the loss of her eye, a serious bodily injury. The jury could also find that appellant used and intended to use his hands in a manner capable of causing serious bodily injury when he pressed his fingers into the complainant's eyes and threatened to "pull them out." And the complainant's testimony that appellant, after holding her hostage for two months and repeatedly raping her, beat her into partial unconsciousness with a plastic rod, wood, and wire supports a finding that appellant used and intended to use those items in a manner capable of causing serious bodily injury.

The State's proof is not so obviously weak as to undermine confidence in the jury's determination that appellant used deadly weapons as alleged in the four counts of the indictment. Appellant refers us to no contrary proof, and we find none in the record. Finding no manifest injustice in the jury's guilty verdicts, we overrule the points of error.

The district court prepared separate judgments of conviction for each count. The judgments are affirmed.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: July 11, 2003

Do Not Publish